Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 47 | **DATE** | 4/28/2003 |
| **CASE TITLE** | USA vs. James Kramer | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached order, the Court denies defendant's motion to vacate, set aside, or correct the judgment. Kramer's surrender date is extended to 5/29/03 at 2:00 p.m. (At the designated institution), to permit him to decide whether to appeal from the Court's decision. If Kramer does so, the Court will stay execution of the sentence pending resolution of the appeal.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | APR 3 0 2003 date docketed | |
| ✓ | Docketing to mail notices. | | 99 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | OR | date mailed notice | |
| | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
vs. ) Case No. 02 CR 47
)
JAMES KRAMER )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On June 25, 2002, defendant James Kramer pled guilty to a single charge of mail fraud. The offense involved a scheme by Kramer and others to defraud Kramer's employer, Sherwood, Davis & Geck, Ltd., of the honest services of Kramer and other employees, and to obtain money from SDG and others by means of false and fraudulent pretenses, representations, and omissions. Specifically, Kramer and others misappropriated medical devices from SDG and sold them for their own benefit, pocketing the proceeds. Kramer diverted medical devices having a wholesale value exceeding $600,000, *see* Plea Agreement ¶5, and he pocketed around $100,000. *See* Presentence Report, p. 8, lines 261-63.

Kramer executed a written plea agreement, and at his guilty plea hearing he stated under oath that he had carefully read and gone over the agreement with his lawyer. The plea agreement included an understanding between Kramer and the government that his Sentencing Guidelines criminal history category was I and his total offense level was seventeen, *see* Plea Agreement ¶6; if accepted by the Court, this would have resulted in a sentencing range of twenty-four to thirty months imprisonment. The plea agreement also included an undertaking by the government to move for a downward departure pursuant to Guideline §5K1.1 based on Kramer's cooperation

with the authorities. *Id.* ¶16. That same provision included an agreement by the parties under Federal Rule of Criminal Procedure 11(e)(1)(C)) (now Rule 11(c)(1)(C)) that Kramer "shall be sentenced to a term of imprisonment of not less than 12 months plus one (1) day." *Id.* In the plea agreement, Kramer represented that no promises or representations had been made to him, other than those in the plea agreement, to cause him to plead guilty. *Id.* ¶20. When he entered his guilty plea in open court, Kramer reaffirmed this under oath.

In the presentence report, the Probation Office took issue with the parties' agreed upon calculation of the offense level, recommending a total offense level of fifteen rather than seventeen. The Probation Office's proposed calculation would have resulted in a sentencing range of eighteen to twenty-four months prior to the government's anticipated motion under §5K1.1. The government did not object to the lower calculation. At the sentencing hearing, held on November 18, 2002, the government advised the Court that in light of sentences previously imposed upon other defendants, it had agreed with Kramer to modify the Rule 11(e)(1)(C) agreement to permit imposition of a sentence of nine months imprisonment. The parties did not advise the Court of any other revisions to the Plea Agreement or of any other understandings they had that were inconsistent with the colloquy at Kramer's guilty plea hearing.

The Court accepted the parties' revised Rule 11(e)(1)(C) agreement and imposed a nine month prison term. Defense counsel requested that the Court recommend to the Bureau of Prisons that it designate Kramer to serve his term in a community corrections center (CCC) rather than as straight prison time. At the time, Bureau of Prisons policy authorized such designations, pursuant to 18 U.S.C. §3621(b), which states that the BOP "shall designate the place of the prisoner's imprisonment" and "may designate any available penal or correctional

facility that meets minimum standards of health and habitability established by the Bureau ... that the Bureau determines to be appropriate and suitable," after considering several enumerated factors, including any recommendation made by the sentencing judge. The Court agreed to recommend placement at a CCC because Kramer has joint custodial responsibilities for his two children, was an essential source of their support, and risked losing his job if imprisoned. We advised Kramer, However, that there was no guarantee that the BOP would follow the Court's recommendation. We directed Kramer to report to the designated facility on January 8, 2003 and later extended that date at Kramer's request, without objection by the government.

On December 20, 2002, the BOP changed its policy regarding CCC designation. This change resulted from a directive from the Department of Justice's Office of Legal Counsel stating that applicable law does not permit the BOP to designate a person sentenced to prison to serve his time in a CCC, except for the last 10 percent of a prison term. Specifically, OLC opined that the term "imprisonment" as used in §3621(b) was not synonymous with "community confinement" and that the BOP therefore lacked the discretion to have offenders serve sentences of imprisonment in CCCs. Presumably as a result of this directive, with it determinated a designation for Kramer, the BOP selected a custodial facility rather than a CCC.

On February 12, 2003, Kramer (who had not yet been required to report to begin serving his sentence) filed a motion entitled "motion to vacate, set aside, or correct judgment." In the motion, made pursuant to 28 U.S.C. §§2241 & 2255, Kramer asked the Court to amend the judgment to impose a prison term of one day, to be followed by a term of supervised release with a condition of nine months of community confinement. In his memorandum filed in support of the motion, Kramer argued that the BOP's policy change violated due process, and he also

argued that the policy should not be applied retroactively. Though he did not refer to the Constitution's prohibition against *ex post facto* legislation, the Court construes the latter argument as raising an *ex post facto* claim. Kramer later made a supplemental submission in support of his motion.

The Court ordered the government to respond to Kramer's motion by March 5, 2003. The government ignored this order and filed no response. The Court could have ruled on the matter at that juncture. However, because we were unsure whether the government's non-response indicated that it did not oppose Kramer's request, we set the matter for hearing. At the hearing, the prosecutor advised the Court that despite his earlier failure to object, the government did in fact oppose Kramer's motion. He advised the Court that there were a number of district judges who had rejected similar requests, and he agreed to supply the Court with copies of those decisions. Kramer's attorney likewise cited additional court decisions beyond those referenced in his original memorandum. The Court extended Kramer's surrender date to May 7, 2003 so that we could carefully consider the issues presented by his motion.

## Discussion

Though Kramer's motion on its face relies only on sections 2241 and 2255, one of the district court decisions he cites relied upon Federal Rule of Criminal Procedure 36 to modify the sentence of a defendant who found himself in somewhat the same situation as Kramer. The Court therefore construes Kramer's motion as implicitly making a request for modification pursuant to Rule 36 as well as sections 2241 and 2255.

### A.   Federal Rule of Criminal Procedure 36

In *United States v. Canavan*, Crim. No. 00-276, 2003 WL 245226 (D. Minn. Jan. 22,

4

2003), the court addressed the case of a defendant who had been designated to a CCC under the former BOP policy and who was about to be relocated to a prison as a result of the policy change. The court had originally imposed a one year prison term after granting the government's motion for a downward departure under U.S.S.G. §5K1.1, but in doing so it had recommended designation of a CCC and had specifically relied upon the BOP's prior policy. The court held that the BOP's change in policy gave it the authority to modify the defendant's sentence under Federal Rule of Criminal Procedure 36, which provides that "the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." The court found that the BOP's new policy "misrepresents the Court's sentence no less than if the Clerk had omitted or mistakenly transcribed some important part of the sentence." *Id.* \*1. It therefore modified the sentence to a four year term of probation with a period of twelve months community confinement.

Without commenting on the propriety of using Rule 36 to modify a sentence in this manner, this case is significantly different from *Canavan*. This Court did not rely on the BOP's former policy in any way, shape, or form in imposing the sentence in this case. Specifically, in determining whether to adopt the parties' agreed-upon nine month prison sentence, the Court did not take into account the likelihood that Kramer would be assigned to a CCC rather than to a prison. In addition, though Kramer may have had a realistic hope of being designated to a CCC, the Court made it clear to Kramer and his counsel at the time of sentencing that our recommendation of such a designation was not binding on the BOP.

Moreover, unlike in *Canavan*, which appears to have involved what is commonly known (at least in this District) as a "free-fall" downward departure motion, the present case involved a

§5K1.1 motion that Kramer agreed was specifically conditioned upon the Court's imposition of a specific sentence – a sentence of imprisonment. For this reason, the Court was not free to impose a sentence like the one Kramer now requests – essentially, supervised release with a condition of community confinement. Rather, our only option if we had determined the agreed upon sentence to be inappropriate would have been to reject the parties' agreement and give Kramer the chance to withdraw his guilty plea.[1]

In deciding whether to go along with the parties' agreed upon sentence, the Court, though certainly aware of the BOP's policy, was not influenced by it and did not rely on it. Rather, the Court concluded that imposition of a nine month straight prison term was an appropriate disposition of the case. The Court acknowledges that a prison sentence falls particularly hard on a person who, like Kramer, has responsibilities involving young children. But the offense he committed was a serious one that involved a longstanding and carefully planned and executed scheme to defraud which involved numerous participants, and which resulted in the defendants pocketing of hundreds of thousands, including around $100,000 that Kramer himself effectively stole. In addition, the presentence report reflected that Kramer had admitted in an interview with the Probation Officer that he had "invited" two of the other defendants to participate in the scheme. Presentence Report, p. 8, lines 256-59. Under the circumstances, imposition of a prison term was reasonable and appropriate despite Kramer's significant cooperation with the authorities – indeed, absent his cooperation, a lengthier prison term would have been appropriate.

---

[1] Kramer did not argue that the imposition of a limitation on extent of the Court's ability to depart downward was illegal or improper. *See generally United States v. Rothberg*, 222 F. Supp. 2d 1009, 1014-15 (N.D. Ill. 2002) (discussing *United States v. Stockdall*, 45 F.3d 1257 (8th Cir. 1995)).

6

For these reasons, Rule 36 does not provide the Court with a basis to modify Kramer's sentence.

**B.     Due process**

Kramer does not have a viable due process claim arising from the BOP's policy change. To make out a due process claim, a party must assert the infringement of a protected liberty or property interest. *See, e.g., Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 460 (1990). Section 3621(b) makes the BOP's designation of an appropriate institution entirely discretionary, and its failure to designate him to a CCC left him assigned to an ordinary prison setting. Under the circumstances, he did not have a protected liberty or property interest in designation to a CCC. *See Sandin v. Conner,* 515 U.S. 472, 483-84 (1995); *Stanley v. Litscher,* 213 F.3d 340, 342 (7th Cir. 2000) ("No fixed set of criteria entitles anyone to admission, and exclusion leaves the prisoner with the normal attributes of confinement."). *Accord, Lee v. Governor of State of New York,* 87 F.3d 55, 58-59 (2d Cir. 1996) (statutory change rendering prisoner ineligible for temporary release program did not violate due process); *Dominique v. Weld,* 73 F.3d 156, 160-6§ (1st Cir. 1996) (transfer from work release program to medium security prison did not violate due process); *Francis v. Fox,* 838 F.2d 1147, 1149-50 (11th Cir. 1988) (same).

In one of the cases cited by Kramer that addresses the BOP's policy change, the court concluded that the change violated the defendant's due process right to be sentenced based on accurate information. *Iacoboni v. United States,* No. C.A. 03-30005-MAP, 2003 WL 1442420, at *27 (D. Mass. Mar. 20, 2003). There is no question that the Due Process Clause protects a defendant from being sentenced based on materially inaccurate information. *See United States v.*

7

*Addonizio,* 442 U.S. 178, 187 (1979); *United States v. Tucker,* 404 U.S. 443, 447 (1972); *United States v. Wicks,* 132 F.3d 383, 388 (7th Cir. 1997). But that principle does not entitle Kramer to relief. As noted earlier, the Court accepted the parties' agreement to a nine month prison term without regard to the possibility that Kramer could be designated to a CCC. Put another way, we would have imposed exactly the same sentence even if the former policy of CCC designation had not existed. Thus Kramer's sentence was not tainted by any material misinformation of constitutional magnitude. *Accord, United States v. Schild,* No. 00-40021-01, 2003 WL 260672, at *3 (D. Kan. Jan. 21, 2003); *United States v. Herron,* No. 03-3039-JAR, 2003 WL 272170, at *1 (D. Kan. Feb. 3, 2003); *United States v. Andrews,* 240 F. Supp. 2d 636, 638-39 (E.D. Mich. 2003). *Compare Culter v. United States,* 241 F. Supp. 2d 19 (D.D.C. 2003) (holding that policy change violated due process because court had relied on BOP policy in imposing sentence); *United States v. West,* No. 03-CV-70239-DT, 2003 WL 1119990, at *4 (E.D. Mich. Feb. 20, 2003) (same).

## C.     *Ex Post Facto* Clause

The Constitution prohibits the government from enacting *ex post facto* laws. U.S. Const., Art. I, § 10, cl. 1. In *Beazell v. Ohio,* 269 U.S. 167 (1925), the Supreme Court described the purpose of this provision:

> The constitutional prohibition and the judicial interpretation of it rest upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused.

*Id.* at 170.

Most of the Supreme Court's *Ex Post Facto* Clause jurisprudence has involved that constitutional provision's prohibition against enactments which, by retroactive operation, increase the punishment for a crime after its commission – the particular prohibition at issue in this case. *See Lynce v. Mathis,* 519 U.S. 433, 441 (1997); *Collins v. Youngblood,* 497 U.S. 37, 42 (1990). Claims that the law has inflicted "a greater punishment, than the law annexed to the crime, when committed," *Calder v. Bull,* 3 Dall. 386, 390, 1 L.Ed. 648 (1798) (emphasis omitted), "implicate the central concerns of the *Ex Post Facto* Clause: 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.'" *Lynce,* 519 U.S. at 441 (quoting *Weaver v. Graham,* 450 U.S. 24, 30 (1981)).

The fact that Kramer lacked a statutory entitlement to be designated to a CCC does not preclude his *ex post facto* claim. As the Supreme Court has stated, "[t]he presence or absence of an affirmative, enforceable right is not relevant ... to the *ex post facto* prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense." *Weaver v. Graham,* 450 U.S. 24, 30-31 (1981).

The *Ex Post Facto* Clause's prohibition against retroactive increases in punishment is not limited to laws that affect the length of a prison term that the sentencing judge can impose; it also

applies to enactments that affect the amount of time that a defendant will actually serve. In *Weaver v. Graham,* the Court held that a statute that decreased the amount of good-behavior credit that a prisoner would receive in the future was unconstitutional as applied to a defendant who had pled guilty before the statute's enactment. Because the statute effectively postponed the date when the defendant would become eligible for early release, the Court unanimously concluded that violated the *Ex Post Facto* Clause. *Weaver,* 450 U.S. at 36. *See also Lynce v. Mathis,* 519 U.S. 433 (1997) (statute that retroactively cancelled provisional early release credits was unconstitutional).

On the other hand, "not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited." *Garner v. Jones,* 529 U.S. 244, 250 (2000). The question is "a matter of 'degree.'" *Morales v. California Department of Corrections,* 514 U.S. 499, 509 (1995) (quoting *Beazell,* 269 U.S. at 171). The controlling inquiry is whether retroactive application of a change in the law creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.*

The Court does not believe that the BOP's change of policy, as applied to Kramer, violates the *Ex Post Facto* Clause. First of all, the policy change did not retroactively increase the punishment applicable to mail fraud generally, or to Kramer's offense in particular. Second, Kramer *agreed* to imposition of a sentence of twelve months imprisonment; his agreement was not conditioned, either expressly or implicitly, on the BOP's exercise of its then-existing discretion to designate him to a CCC. Third, the BOP's policy change, unlike the enactments at issue in *Weaver* and *Lynce,* has no effect on the length of Kramer's confinement; rather it merely affects the conditions under which he will be confined. *See Lee,* 87 F.3d at 59-60; *Dominique,*

73 F.3d at 163; *Francis,* 838 F.2d at 1150.

One case not cited by Kramer that arguably supports his position, and a potentially powerful one given its provenance, is *In re Medley,* 134 U.S. 160 (1890). In *Medley,* the Court held that a statute that provided that persons sentenced to death were to be kept in solitary confinement until executed violated the *ex post facto* clause as applied to a person convicted and sentenced to death prior to the statute's enactment. *Id.* at 166-67. The Court stated that "[t]his matter of solitary confinement is not ... a mere unimportant regulation as to the safekeeping of the prisoner," and it found that the statute's significant effects were not ameliorated by the fact that the prisoner could have visits from counsel, doctors, clergy, and family members. *Id.* at 167. It focused on the significant differences between solitary and regular confinement in prison, concluding that the requirement of solitary confinement was "an additional punishment of the most important and painful character" beyond what was available at the time of the defendant's crime. *Id.* at 171. Assuming for purposes of discussion that this aspect of *Medley* still represents good law, the change attacked by Kramer differs from the one in *Medley* in a significant respect. The Colorado statute at issue in *Medley* quite clearly *added* a severe term of confinement beyond what previously had been imposed. The BOP's regulatory change, by contrast, eliminates a favorable option that was conferred by what may fairly be called executive grace. By making it clear that all persons sentenced to prison terms will in fact be designated to a prison, the BOP's new policy, unlike the statute in *Medley,* imposes no "additional punishment" beyond that authorized at the time of Kramer's offense.

## Conclusion

For the reasons stated above, the Court denies defendant's motion to vacate, set aside, or

correct the judgment. Kramer's surrender date is extended to May 29, 2003 at 2:00 p.m. (at the designated institution), to permit him to decide whether to appeal from the Court's decision. If Kramer does so, the Court will stay execution of the sentence pending resolution of the appeal.

                                                    MATTHEW F. KENNELLY
                                                    United States District Judge

Date:   April 28, 2003